# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGRICOLA ABC, S.A. de C.V., a Mexican Corporation,<br><br>                                  Plaintiff,<br><br>         vs.<br><br>CHIQUITA FRESH NORTH AMERICA, LLC, a Delaware Limited Liability Company and successor in interest to CHIQUITA FRUPAC, INC., a Delaware Corporation; ALEJANDRO CANELOS RODRIGUEZ, an individual; and ARISTEO ALEJANDRO CANELOS GUILLEN, an individual,<br><br>                                  Defendant. | CASE NO. 10cv772-IEG(NLS)<br><br>Order Denying Defendants Alejandro Canelos Rodriguez and Aristeso Alejandro Canelos Guillen's Motion to Dismiss Based upon Lack of Venue; Denying Motion to Dismiss for Improper Service of Process; Alternatively Quashing Service of Process and Granting Plaintiff Time to Effect Proper Service |

Defendants Alejandro Canelos Rodriguez and Aristeo Alejandro Canelos Guillen ("Defendants") move the Court to dismiss Plaintiff's complaint against them under Fed. R. Civ. P. 12(b)(3), based upon improper venue, and pursuant to Fed. R. Civ. P. 12(b)(5), based upon insufficient service of process. Plaintiff has filed an opposition and Defendants have filed a reply. The Court finds Defendants' motion suitable for submission on the papers and without oral argument pursuant to Civ. L.R. 7.1(d)(1), and the hearing was previously vacated. For the reasons set forth herein, Defendants' motion to dismiss for lack of venue is DENIED, and their motion to dismiss for improper service of process is DENIED. However, Plaintiff's service of process upon Defendants is quashed and Plaintiff is granted time to effect proper service upon Defendants.

### *Background*

Plaintiff Agricola ABC, S.A. de C.V., a Mexican corporation with its principal place of business located in Sinaloa, Mexico, operates a large farming business.  [Complaint, ¶ 2.]  At the time of the events which give rise to Plaintiff's complaint, Defendant Alejandro Canelos Rodriguez jointly managed Plaintiff Agricola along with his brother, Constantino Canelos Rodriguez.  [Id., ¶ 7.]  It appears from the papers that the extended Canelos family (including both Alejandro and Constantino) still own the Plaintiff company.

On December 14, 1998, Plaintiff Agricola and two other unnamed companies (collectively "the Producers") entered into a vegetable distribution agreement with Defendant Chiquita Frupac. [Complaint, ¶ 7.]  In accordance with that agreement, the Producers received advances from Defendant Chiquita in an amount allegedly totaling $18,650,000.  [Id., ¶ 8.]  In order to guarantee repayment of the advances, the Producers (including Defendant Alejandro Canelos Rodriguez and his brother Constantino Canelos Rodriguez) created a Guarantee Trust on January 26, 1999.  The purpose of the Guarantee Trust was to hold several parcels of real property in Mexico as security for the re-payment of the debt.  [Id., ¶ 9.]

Thereafter, Plaintiff Agricola and the other Producers reached an agreement with Defendant Chiquita, to resolve the outstanding balance on the alleged debt from $18,650,000 to $5,000,000.  [Complaint, ¶ 10.]  Five parcels of land in San Diego County, totaling 100 acres and valued at more than $5,000,000, were transferred to Defendant Chiquita in full satisfaction of the loan.  Plaintiff alleges, however, that Defendant Alejandro Canelos Rodriguez and Defendant Chiquita entered into a secret agreement whereby the properties in question were eventually transferred to entities associated with Defendant Alejandro Canelos Rodriguez, without consideration.  [Id., ¶ 11.]  Plaintiff further alleges Defendant Alejandro Canelos Rodriguez improperly caused one of the Canelos family companies to transfer title to another piece of real property in Mazatlan, Mexico, to Defendant Chiquita, for his own personal benefit and to the detriment of Plaintiff Agricola, the Producers, and the other Canelos family members.  [Id., ¶ 12.]

Plaintiff alleges Defendant Chiquita has released Defendant Alejandro Canelos Rodriguez from all obligation under the debt, but has refused to provide such a release to Plaintiff.  Defendant

Chiquita has also refused to release the other parcels of land in Mexico still held in the Guarantee Trust. [Complaint, ¶ 13.]

Plaintiff invokes the diversity jurisdiction of this Court to bring its claims against Defendants. As to Defendant Chiquita, Plaintiff alleges breach of contract, and also seeks declaratory relief as to the status of the debt as well as an accounting. [Complaint, ¶¶ 15-30.] As to Defendants Alejandro Canelos Rodriguez and Aristeo Alejandro Canelos Guillen (Alejandro's son), Plaintiff brings a claim for equitable indemnity, arguing Defendants were co-obligors on the debt to Chiquita and asking for a ruling that these individual Defendants are obligated to indemnify Plaintiff and other co-obligors on a pro rata basis based upon their failure to contribute toward the repayment of the debt. [Id., ¶¶ 31-34.]

Only Defendants Alejandro Canelos Rodriguez and Aristeo Alejandro Canelos Guillen have brought the current motion. Defendant Chiquita has already filed an answer. An Early Neutral Evaluation Conference is set before Magistrate Judge Stormes on July 28.

### ***Discussion***

Defendants Alejandro Canelos Rodriguez and Aristeo Alejandro Canelos Guillen move to dismiss the complaint under Fed. R. Civ. P. 12(b)(3), based upon improper venue. They also seek dismissal of the action under Fed. R. Civ. P. 12(b)(5) based upon insufficient service of process.[1]

*1.*     *Is Venue Proper?*

Pursuant to Fed. R. Civ. P. 12(b)(3), the Court may dismiss an action for improper venue. In evaluating a motion to dismiss under Rule 12(b)(3), the district court need not accept the pleadings as true, and may consider facts outside the pleadings. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004). Where there are disputed issues of fact, the court must draw all reasonable inferences in favor of the non-moving party. Id. at 1138.

In their motion, Defendants argue venue is improper in this district under the general venue statute, 28 U.S.C. § 1391(a)(1). Under that section, where an action is brought based solely on diversity of citizenship, venue lies in the following districts:

---

[1] Defendants do not challenge personal jurisdiction and also do not move under the doctrine of *forum non conveniens*.

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a)(1).  Defendants argue they do not reside in California, none of the events or omissions giving rise to Plaintiff's claims occurred in California, and Defendants are not subject to personal jurisdiction in California.[2]

According to the facts set forth in the Complaint as well as in their declarations in support of their motion, however, both Defendants are aliens subject to the venue provision of § 1391(d), the Alien Venue Act.  The Complaint alleges both Defendants are citizens of Mexico, an allegation that Defendants do not dispute.  [Complaint, ¶¶ 5 and 6.]  Both Defendants reside in the State of Sinaloa, Mexico.  [Declaration of Alejandro Canelos Rodriguez in Support of Motion ("Alejandro Decl."), ¶ 1; Declaration of Aristeo Alejandro Canelos Guillen in Support of Motion ("Aristeo Decl."), ¶ 1.]  As such, pursuant to § 1391(d), Defendants may be sued "in any district."  See Oil and Gas Ventures-First 1958 Fund, Ltd. v. Kung, 250 F. Supp. 744, 750 (S.D.N.Y. 1966) (Chinese citizen residing in Texas could be sued in Texas under broad alien venue provision of § 1391(d) so long as valid personal service of process could be effected.). Therefore, the Court finds venue is proper in this District, and denies Defendants' motion to dismiss on that basis.

2.    *Service of Process*

Defendants also argue this action should be dismissed under Fed. R. Civ. P. 12(b)(5) because they were not properly served in accordance with Fed. R. Civ. P. 4.  Defendants argue they have no dwelling or usual place of abode in the United States, such that Plaintiff was required to effect service upon them in Mexico under Fed. R. Civ. P. 4(f) and the Hague Convention. Where a defendant challenges the method of service, plaintiff bears the burden of establishing service was valid under Rule 4.  Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).  Where factual issues are presented on a motion under Rule 12(b)(5), the court may hear evidence and determine the facts. Old Republic Ins. Co. v. Pacific Financial Svcs., 301 F.3d 54, 57 (2d Cir.

_____

[2]Defendants make this statement only insofar as it impacts venue.  Defendants do not discuss any facts or case law regarding whether the Court has personal jurisdiction over them.

1   2002).

2       "Service of process is the means by which a court asserts its jurisdiction over the person."

3   SEC v. Ross, 504 F.3d 1130, 1138 (9th Cir. 2007); see also Fed. R. Civ. P. 4(k) ("[s]ervice.of a

4   summons or filing a waiver of service is effective to establish jurisdiction over the person of a

5   defendant"). "[I]n the absence of proper service of process, the district court has no power to

6   render any judgment against the defendant's person or property ...." Id. at 1138-39. Thus, service

7   of process "must be 'notice reasonably calculated ... to apprise interested parties of the pendency

8   of an action and afford them an opportunity to present their objections'." Id. at 1138 (quoting

9   Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). Nonetheless, a plaintiff's

10  substantial compliance with Rule 4's requirements may be sufficient to provide jurisdiction so long

11  as the defendant receives sufficient notice of the complaint. Direct Mail Specialists, Inc. v. Eclat

12  Computerized Technologies, Inc., 840 F.2d 685, 688 (9th Cir. 1988). Ordinarily, where the court

13  finds the method of service of process was not proper, the remedy is to quash service and require

14  plaintiff to effect proper service. Stevens v. Security Pacific Nat'l Bank, 538 F.2d 1387, 1389 (9th

15  Cir. 1976).

16      Plaintiff argues it properly effected service of the summons and complaint under the

17  provisions of Fed. R. Civ. P. 4(e)(2) by leaving those papers with a person of suitable age and

18  discretion at Defendants' dwelling house or usual place of abode in Coronado, California.

19  Plaintiff's process server left a copy of the summons and complaint with a woman by the name of

20  Carmen Padilla at a vacation home in Coronado, California owned by Nora Idalia Canelos,

21  Defendants' wife and mother, respectively. [Doc. Nos. 4 and 5; Alejandro Decl., ¶ 3;.Aristeo

22  Decl., ¶ 3.] According to Defendants, Ms. Padilla is the cleaning lady. [Alejandro Decl., ¶ 4;

23  Aristeo Decl., ¶ 4.] Ms. Padilla also resides at the home. [Doc. Nos. 4 and 5 (identifying Ms.

24  Padilla as a co-occupant).] Plaintiff also mailed the summons and complaint to both Defendants at

25  the home in Coronado. [Doc. Nos. 4 and 5.] Both Defendants deny having been served with the

26  Complaint. [Alejandro Decl., ¶ 5; Aristeo Decl., ¶ 5.]

27      Defendants argue that the Coronado home is not their "dwelling house or usual place of

28  abode" and that Plaintiff was instead required to serve them in Mexico pursuant to Fed. R. Civ. P.

4(f). According to the declarations submitted by Defendants in support of their motion, Defendants do not live at or have any ownership interest in the home in Coronado. [Alejandro Decl., ¶ 3; Aristeo Decl., ¶ 3.] Defendant Alejandro Canelos Rodriguez makes approximately 4 trips a year to the home in Coronado to see doctors, but stays no more than one to two days. [Reply Declaration of Alejandro Canelos Rodriguez ("Alejandro Reply Decl."), ¶ 3.] Defendant Aristeo Alejandro Canelos Guillen, who is 37-years-old, has not lived in the home since he graduated from college in 1997. [Reply Declaration of Aristeo Alejandro Canelos Guillen ("Aristeo Reply Decl."), ¶ 5.] It appears Defendant Alejandro Canelos Rodriguez was at the home in Coronado earlier in July, but it is not clear when Defendant Aristeo Alejandro Canelos Guillen was last at the house.

The fact defendants are citizens of Mexico does not, in and of itself, require Plaintiff to comply with Fed. R. Civ. P. 4(f) governing service of individuals in a Foreign Country. Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang, 105 F.3d 521, 524 (9th Cir. 1997) (fact defendant was a foreign citizen did not preclude plaintiff from effecting service under Rule 4(e)). Instead, the question is whether the Coronado home can be considered their "dwelling house or usual place of abode."

As pointed out by Wright and Miller's treatise on Federal Practice and Procedure,

> The language "dwelling house or usual place of abode" in Rule 4(e)(2) is taken directly from the former Equity Rule 13. Despite the length of time these words have been a part of federal practice, the judicial decisions do not make clear precisely what they mean and the facts of a particular case often prove to be crucial. Indeed, because of today's environment of global travel, job mobility, and multiple residences, the meaning of the phrase has been blurred even further. The majority of cases interpreting the words in the context of determining the validity of service of process appear to have focused on their literal meaning.

Charles Alan Wright and Arthur R. Miller, 4A Fed. Prac. & Proc. Civ. § 1096 (3d ed.). The cases discussing whether a place may be classified as a dwelling house or usual place of abode are highly fact-specific. A person can have more than one dwelling house or usual place of abode for purposes of Rule 4(e)(2), so long as each contains sufficient indicia of permanence. Stars' Desert Inn Hotel & Country Club, Inc., 105 F.3d at 524; National Development Co. v. Triad Holding Corp., 930 F.2d 253, 257 (2d Cir. 1991).

For example, in National Development Co., defendant Khashoggi was a wealthy citizen of

Saudi Arabia and a frequent intercontinental traveler, who did not "usually" stay at any one location but instead spent his time in twelve different locations around the world including at homes in Spain, Rome, Paris, and Monte Carlo. 930 F.2d at 256. Defendant owned and furnished the 23,000 square foot apartment in New York City, where he was served, and listed the apartment as one of his residences in a bail application submitted in connection with a criminal proceeding. In addition, although Defendant only lived at the apartment 34 days during the year in which he was served, Defendant was actually living in the apartment on the date he was served. Under these circumstances, the court found the apartment was properly considered defendant's "dwelling house or usual place of abode" and service at that location was valid. Id.

In another case cited by Plaintiff, Ali v. Mid-Atlantic Settlement Svcs., Inc., 233 F.R.D. 32 (D.D.C. 2006), defendant was a law student at the University of Pennsylvania. Plaintiff's process servers delivered the summons and complaint to defendant's mother, at the address listed by defendant on the University of Pennsylvania internet directory as his permanent address while he attended law school. The process server also delivered a copy of the summons and complaint to the concierge of defendant's apartment building at law school, and put a copy in the door at yet a third address after talking to defendant and being instructed to leave them there in that manner. At no time did the defendant dispute that he actually received all of the papers. Thus, the court concluded service was effective under Rule 4(e)(2). Id. at 38.

Based upon the declarations submitted by both parties, the Court finds Plaintiff has failed to demonstrate the home in Coronado was the "dwelling house or usual place of abode" of either Defendant, such that substitute service under Rule 4(e)(2) was invalid. Defendants both have permanent residences in Sinaloa, Mexico, where their farming business is located. [Alejandro Reply Decl., ¶ 3; Aristeo Reply Decl., ¶ 4.] Defendant Alejandro stays at the home in Coronado approximately 4 times per year, for a few days at a time. [Alejandro Reply Decl., ¶ 3.] Defendant Aristeo does not specify how frequently he stays at the home in Coronado. Defendant Alejandro initially owned the home in Coronado, but transferred it to his wife in 1993. [Declaration of J. Ray Ayers in Opposition to Motion, ¶¶ 3 and 4; Exhibits 1 and 2.] Aside from the fact Defendants' wife and mother, respectively, lives at the property, there is no other evidence indicating either

1   Defendant usually stays at the Coronado home such that it could be considered his "usual place of

2   abode."

3       The declaration of Defendants' nephew/cousin, Aristeo Canelos Avila, submitted by

4   Plaintiff in opposition to Defendants' motion, contains several facts which on their face appear

5   inconsistent with Defendants' own assertions.  For example, although the Defendants state they

6   rarely visit the Coronado home, Avila states that they "have significant wealth and fly regularly

7   back and forth to their homes in Sinaloa, [and] San Diego...."[3] [ [Declaration of Aristeo Canelos

8   Avila ("Aristeo Avila Decl."), ¶ 3.]  However, even assuming Defendants "regularly" visit the

9   Coronado home, that does not establish the Coronado home is their "usual place of abode."

10      Avila states Aristeo Alejandro Canelos Guillen was raised through high school at the

11  Coronado home and stays there often in the summer, and that Guillen further has a driver's license

12  and car registered at the Coronado address, and receives mail there. [Id., ¶ 5.]  However, these

13  facts are more indicative of someone who has previously lived at the address, and who periodically

14  visits from his permanent home in Mexico.  None of the facts set forth in Avila's declaration tend

15  to establish that in late April of 2010, when Plaintiff's process server left a copy of the summons

16  and complaint with Ms. Padilla at the Coronado home, either Defendant used that home as their

17  dwelling house or usual place of abode.  The attempted service upon Defendants at the Coronado

18  home was not "notice reasonably calculated ... to apprise interested parties of the pendency of an

19  action and afford them an opportunity to present their objections."  Mullane, 339 U.S. at 314.

20      Upon a finding that service was not proper, the court in its discretion may dismiss the

21  action or quash service of process.  Stevens v. Security Pacific Nat'l Bank, 538 F.2d 1387, 1389

22  (9th Cir. 1976).  Because there is no reason to believe Plaintiff could not properly effect service

23  upon Defendants, either by utilizing the Hague Convention under Rule 4(f) to serve them at their

24  homes in Sinaloa, Mexico, or by personally serving the Defendants if they are physically present

25  in San Diego, the Court declines to dismiss the action and instead  quashes service of process.

26  Plaintiff is granted 60 days within which to effect service by proper alternate means.

27

28      [3]Avila also states one or both Defendants own homes in Nogales, Arizona, but that fact is not relevant to determining whether service at the Coronado home was sufficient.

1

*Conclusion*

2         For the reasons set forth herein, the Court DENIES Defendants' motion to dismiss based

3  upon improper venue, and DENIES Defendants' motion to dismiss based upon insufficient service

4  of process.  Upon its finding that the Coronado home at which Plaintiff effected service was not

5  Defendants' usual place of abode, however, the Court finds service of process was not sufficient

6  and alternatively quashes service of process. Plaintiff is granted 60 days within which to properly

7  effect service upon Defendants Alejandro Canelos Rodriguez and Aristeo Alejandro Canelos

8  Guillen.

9         **IT IS SO ORDERED**.

10  **DATED:  July 28, 2010**

11

**IRMA E. GONZALEZ, Chief Judge**
12  **United States District Court**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28