1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT

10        SOUTHERN DISTRICT OF CALIFORNIA

11
12  AGRICOLA ABC, S.A. de C.V., a Mexican          )    Civil No. 10cv00772  AJB (MDD)
    Corporation,                                   )
13                                                 )
                       Plaintiff,                  )    ORDER GRANTING MOTIONS TO
14  v.                                             )    DISMISS FOR LACK OF SUBJECT
                                                   )    MATTER JURISDICTION AND
15  CHIQUITA FRESH NORTH AMERICA,                  )    DENYING REMAINING PENDING
    LLC, a Delaware Limited Liability Company      )    MOTIONS
16  and successor in interest to CHIQUITA          )
    FRUPAC, INC., a Delaware Corporation;          )    [Doc. Nos. 92, 93, 106, 112 and 114]
17  ALEJANDRO CANELOS RODRIGUEZ, an                )
    individual; and ARISTEO ALEJANDRO             )
18  CANELOS GUILLEN, an individual,                )
                                                   )
19                     Defendants.                 )
    _____           )

20        Plaintiff, Agricola ABC, S.A. de C.V. ("Agricola"), brings the instant action against Defendants,

21  Chiquita Fresh North America, LLC ("Chiquita Fresh"), Chiquita Frupac, Inc. ("Chiquita Frupac"),

22  Alejandro Canelos Rodriguez ("Alejandro Rodriguez"), and Aristeo Alejandro Canelos Guillen

23  ("Guillen"). [Compl. ¶ 28-30.]

24        Chiquita Fresh moves to dismiss for lack of subject matter jurisdiction or in the alternative,

25  moves for summary judgment. [*See* Def.'s Mem. Doc. No. 112-1.] Guillen joins Chiquita Fresh's

26  Motion [Doc. No. 118] and Rodriguez files a separate Reply in support of Chiquita Fresh's Motion to

27  Dismiss [Doc. No. 128].

28

1

1   Defendant Alejandro Rodriguez also filed a separate motion pursuant to Federal Rule of Civil

2   Procedure 12(b)(1), 12(b)(2) and 12(b)(5) to dismiss the action for lack of subject matter jurisdiction;

3   lack of personal jurisdiction; and to quash service of process on Defendant, [Doc. No. 114].  The

4   Plaintiff filed an opposition, [Doc. No. 122], and Rodriguez filed a reply, [Doc. No. 128].

5   Guillen filed a separate motion to dismiss counterclaim for equitable indemnity, [Doc. No. 106].

6   The Plaintiff filed an opposition, [Doc. Nos. 120 and 121], and Defendant Guillen filed a reply, [Doc.

7   No. 123].

8   Plaintiff Agricola has filed two separate motions: (1) a Motion to Substitute Party; and (2) a

9   Motion for Leave to File Supplemental Complaint, [Doc. Nos. 92 and 93 respectively].  Defendants filed

10   oppositions, [Doc. Nos. 104, 107, and 103], and the Plaintiff filed replies, [Doc. Nos. 111 and 110].

11   The hearing date set for December 21, 2011, for all of the above referenced motions, is hereby

12   VACATED as the Court finds these motions appropriate for submission on the papers without oral

13   argument pursuant to Civil Local Rule 7.1.d.1. Based on the parties' moving papers and for the reasons

14   set forth herein, the Motions to Dismiss for lack of subject matter jurisdiction [Doc. No. 112, 114 and

15   joinder motion Doc. No.118] are hereby GRANTED and the remaining motions, Doc. Nos. 106 and the

16   non-jurisdictional portions of 114, are hereby DENIED AS MOOT.  Plaintiff Agricola's motions: (1) a

17   Motion to Substitute Party; and (2) a Motion for Leave to File Supplemental Complaint, [Doc. Nos. 92

18   and 93 respectively], are DENIED.

19   ***Background***

20   *I. Factual Background*

21   *A. Allegations Contained in the Complaint*

22   Agricola, a Mexican corporation with its principal place of business located in Sinaloa, Mexico,

23   operates a large farming business. [Complaint, ¶ 2.] At the time of the events which give rise to

24   Plaintiff's complaint, Defendant Alejandro Rodriguez jointly managed Plaintiff Agricola along with his

25   brother, Constantino Rodriguez. [*Id.*, ¶ 7.]

26   On December 14, 1998, Agricola and two other unnamed companies (collectively "the

27   Producers") entered into a vegetable distribution agreement with Chiquita. [*Id.*] In accordance with that

28   agreement, the Producers received advances from Chiquita in an amount allegedly totaling $18,650,000.

10cv00772

[*Id.*, ¶ 8.] In order to guarantee repayment of the advances, the Producers (including Defendant Alejandro Canelos Rodriguez and his brother Constantino Canelos Rodriguez) created a Guarantee Trust on January 26, 1999. The purpose of the Guarantee Trust was to hold several parcels of real property in Mexico as security for the re-payment of the debt. [*Id.*, ¶ 9.]

Thereafter, Agricola and the other Producers reached an agreement with Chiquita, to resolve the outstanding balance on the alleged debt from $18,650,000 to $5,000,000. [Compl., ¶ 10.] Five parcels of land in San Diego County, totaling 100 acres and valued at more than $5,000,000, were transferred to Chiquita in full satisfaction of the loan. Agricola alleges, however, that Alejandro Canelos Rodriguez and Chiquita entered into a secret agreement whereby the properties in question were eventually transferred to entities associated with Alejandro Rodriguez, without consideration. [*Id.*, ¶ 11.] Plaintiff further alleges Alejandro Rodriguez improperly caused one of the Canelos family companies to transfer title to another piece of real property in Mazatlan, Mexico, to Chiquita, for his own personal benefit and to the detriment of Agricola, the Producers, and the other Canelos family members. [*Id.*, ¶ 12.]

Agricola alleges Chiquita has released Alejandro Rodriguez from all obligation under the debt, but has refused to provide such a release to Agricola. Chiquita has also refused to release the other parcels of land in Mexico still held in the Guarantee Trust. [Compl., ¶ 13.] As to Chiquita, Agricola alleges breach of contract, and also seeks declaratory relief as to the status of the debt as well as an accounting. [*Id.*, ¶¶ 15-30.] As to Alejandro Rodriguez and Guillen (Alejandro's son), Agricola brings a claim for equitable indemnity. Agricola alleges Defendants were co-obligors on the debt to Chiquita and asks for a ruling that these individual Defendants are obligated to indemnify Agricola and other co-obligors on a pro rata basis, based upon their failure to contribute toward the repayment of the debt. [*Id.*, ¶¶ 31-34.]

### B. Allegations Contained in the Amended Answer and Counterclaims/Crossclaims

In its original Answer, Chiquita alleged the following affirmative defense:

> Plaintiff, Chiquita, and the co-defendants in this action and others entered into a judicial settlement agreement in Mexico. The agreement was presented to and approved by the federal district court in Hermosillo, Sonora, México, in case no. 5/2002. The judgment approving the judicial settlement resolved all controversies arising out of, or relating to Chiquita's relationship with the Plaintiff and the other debtors, and provided immediate remedies and procedures to enforce the settlement in the event its terms were breached. The judgment validating and ordering

1
2
3
4

> enforcement of the judicial settlement and the terms of the trust is now final, despite several unsuccessful attempts at appellate and federal "amparo" review made by Constantino Canelos Rodriguez, the legal representative of the Plaintiff in this action. Therefore, the claims asserted by Plaintiff in this case were merged in the final judgment or judgments entered and upheld by Mexican courts, and Plaintiff's claims in this action are now barred by res judicata and collateral estoppel.

5   [Answer, Doc. No. 12, ¶ 29.] In its Proposed Amended Answer, Chiquita alleges the following

6   additional facts.

7        Chiquita entered into an initial Distribution Agreement with Alejandro Canelos Rodriguez and

8   Constantino Rodriguez in October 1997, whereby Chiquita not only financed the brothers but also

9   distributed their produce. [Amended Answer, ¶ 9-10.] As security for repayment of debts, the plantings

10  on and production from the various Mexican properties comprising the Canelos farming operations (and

11  either owned or controlled by the brothers) were placed in a Mexican trust, with Bancomer, S.A. de

12  C.V. named as trustee. [Id. ¶ 11.] In addition to placing the Mexican real estate in a trust, the Canelos

13  brothers caused a Liberian corporation by the name of Alcon, Inc. (a company owned and/or controlled

14  by the brothers) to guarantee the debts owed to Chiquita. Alcon's guarantee was secured by a 1997 deed

15  of trust placed against five parcels of real estate located in San Diego County. [Id. ¶ 12.]

16       On December 14, 1998, Chiquita, the Canelos brothers, and associated companies entered into a

17  new distribution agreement (the "1998 Distribution Agreement"). In addition, on January 26, 1999, the

18  parties entered into a new trust agreement (the "1999 Trust") in Mexico, identifying as security certain

19  interests in crops to be grown on an array of Mexican real estate as well as the proceeds of the sale of

20  those crops. Bancomer was again named trustee. [Id. ¶ 14-15.]

21       By January 14, 2000, the Canelos operations owed Chiquita over $17.705 million US. Chiquita

22  was willing to provide some additional continued financing to allow the Canelos brothers to continue

23  their operations. As a result, Chiquita and the Canelos brothers entered into a Settlement Agreement (the

24  "2000 Settlement Agreement") agreeing to the total amount of debt owed and the schedule for payment

25  of the debt. [Id. ¶ 18.] The 2000 Settlement Agreement provided that each of the brothers was liable for

26  the payment of the full agreed amount to Chiquita. [Id. ¶ 19.]

27       By early 2001, the Canelos brothers were in default and owed Chiquita over $18 million. [Id. ¶

28  21.] Chiquita began enforcing its rights as a creditor by (a) selling the San Diego County property at a

non-judicial trustee's sale for a credit bid of $5,209,500 and (b) filing a petition with the Federal District Court in Hermosillo, Sonora, Mexico, asking that court to approve and enter judgment enforcing the 2000 Settlement Agreement. [*Id.*] The Mexican court granted Chiquita's request and entered judgment. [*Id.* ¶ 22-3.] In October 2005, Agricola and others filed a suit before a Mexican Federal District Court in Sinaloa, Mexico, asking that the Mexican judgment be declared null and void. [*Id.* ¶ 24.] On August 28, 2007, a Mexican federal appellate court in Sinaloa, Mexico issued a decision rejecting Agricola's challenge to the validity of the Mexican judgment. [*Id.* ¶ 25.] At the present time, the Canelos brothers and related parties owe Chiquita more than $30 million US under the Settlement Agreement. [*Id.* ¶ 28.]

Based upon these facts, in Count One of its Counterclaim/Crossclaim Chiquita seeks a declaratory judgment that the Mexican Judgment is final, valid, and binding on all debtors and fully enforceable under the laws of Mexico. [Amended Answer, ¶ 30-3.] In Count Two, Chiquita seeks to enforce the Mexican judgment and the Settlement Agreement by injunctive or other equitable relief. Finally, in Count Three, Chiquita seeks an order directing Bancomer, as trustee, to perform its duties to protect Chiquita's rights in connection with the Mexican Judgment and Settlement Agreement. (*Id.*, ¶ 42-5.)

## II. Procedural Background

Agricola filed the instant action on April 13, 2010, against Chiquita, Constantino's brother Alejandro Rodriguez and Alejandro's son Guillen ("Counterclaimant"), seeking inter alia a determination regarding the parties respective obligations for the debt. Plaintiff asserts three claims against Chiquita: (1) monetary damages for breach of contract 15, [Compl. ¶ 16-20]; (2) declaratory relief as to status of Plaintiffs debt to Chiquita, [*Id.* ¶ 22-6]; and (3) accounting to determine amount owed by Plaintiff to Chiquita. [*Id.* at ¶ 28-30.]

Chiquita filed an answer on May 28, 2010 and then an Amended Answer and Counterclaim on December 10, 2010, seeking a declaration that the Mexican Judgment is enforceable and also seeks to enforce that judgment in this Court pursuant to Fed. R. Civ. P. 69 and applicable state law. [Counterclaim, Doc. No. 62, ¶¶ 20-5 and 27-32.]

Counter-claimant Guillen answered the Complaint and filed two counterclaims on November 29, 2010, one for equitable indemnity and one for declaratory relief, against Agricola, Constantino

1   Rodriguez and his son Aristeo Canelos Avila (hereinafter "Avila"). Counter-claimant Guillen never

2   served Constantino Rodriguez and Avila in this action, as they could not be located. Agricola is

3   currently the only counter-defendant before this Court. Agricola filed a response to the claims on

4   December 30, 2010, Doc. No. 65. [Decl. Cindy Brand ¶2.]

5       On or about December 20, 2010, Counterclaimant Guillen and Chiquita entered into an

6   assignment of the debt owed to Chiquita by Plaintiff and others, which was the basis for the original

7   complaint. On February 4, 2011, Chiquita and Counterclaimant filed a "Joint Notice of Transfer of

8   Interest" and enclosed a copy of the document, which assigned all rights to the enforcement of the debt

9   from Chiquita to Counterclaimants Alejandro Rodriguez and son Guillen, "Assignment Document." The

10  Assignment Document was drafted under Mexican law as is stated in the Assignment Document, and

11  was signed and transferred in Mexico. [Decl. Cindy Brand ¶3.]

12      On May 23, 2011, the Court issued an Order, Doc. No. 87, dismissing the First Cause of Action

13  in the Counterclaim of Guillen for lack of subject matter jurisdiction and failure to state a claim upon

14  which relief may be granted.

15      On May 24, 2011, Chiquita filed a Notice of Voluntary Dismissal Without Prejudice, Doc. No.

16  126, of Chiquita's counterclaims against Avila and Constantino Rodriguez. Also on May 24, 2011,

17  Counterclaimant  Guillen filed a Notice of Voluntary Dismissal Without Prejudice, Doc. No. 127, of

18  Counterclaims Against Avila and Constantino Rodriguez.

19      Over the past several months, including during his deposition testimony, Counter-claimant

20  Alejandro Rodriguez and son Guillen have stated that they do not intend to pursue any claims in the

21  United States against Plaintiff Agricola, Constantino Rodriguez or Avila. [Decl. Cindy Brand ¶4.] On or

22  about May 9, 2011, Chiquita requested that Plaintiff agree to the dismissal of its counterclaim and

23  crossclaims. Plaintiff has refused to agree to the dismissal, unless the equitable indemnity claim is

24  dismissed with prejudice. [Decl. Cindy Brand ¶¶5-7.]

25                              ***Discussion***

26      Presently there are five motions before the Court: (1) Plaintiff's Motion to Substitute Party; (2)

27  Plaintiff's Motion for Leave to File Supplemental Complaint; (3) Defendant Guillen's Motion to

28  Dismiss  Counterclaim for Equitable Indemnity; (4) Defendant Chiquita's Motion to Dismiss for Lack

10cv00772

1   of Jurisdiction;  and (5) Defendant Alejandro Rodriguez's Motion to Dismiss  for lack of subject matter

2   jurisdiction for want of diversity; lack of personal jurisdiction and to quash service of process on

3   Defendant.

4           As a preliminary matter, the Court must first address jurisdictional issues raised by the motions

5   to dismiss, [Doc. Nos. 112, 114 and 118]. Agricola alleges diversity citizenship pursuant to 28 U.S.C. §

6   1332, asserting that the Complaint is between a citizen of a foreign country and citizens of a State.

7   [Compl. ¶ 1.] Chiquita, Guillen and Alejandro Rodriguez move to dismiss for lack of subject matter

8   jurisdiction because the parties lack complete diversity.

9           The federal courts have limited subject matter jurisdiction and may only hear cases under the

10  power granted by the Constitution and authorized by statue. *Kokkonen v. Guardian Life Ins. Co. of*

11  *America*, 511 U.S. 375, 377 (1994).  All matters are presumed to lie outside the limited jurisdiction, and

12  the Plaintiff bears the burden of establishing the court's requisite subject matter jurisdiction to grant

13  relief. *Id*.  The Constitution requires only minimal diversity of citizenship between any two parties on

14  the opposite sides of an action.  *See State Farm Fires & Cas. Co. v. Tashire*, 386 U.S. 523, 530-31

15  (1967).  However, Congress did not grant the district courts with the full measure of diversity

16  jurisdiction permitted by the Constitution.  *Saadeh v. Farouki*, 107 F.3d 52, 54 (D.C. Cir. 1997).  In

17  controversies involving foreign parties, 28 U.S.C. §1332(a)(2) limits the district court's jurisdiction in

18  civil actions to "the matter in controversy exceed[ing] the sum or value of $75,000 . . . and is between . .

19  . citizens of a State and citizens or subjects of a foreign state." A foreign corporation is deemed a citizen

20  of such foreign state for the purposes of §1332(a)(2). *JPMorgan Chase Bank v. Traffic Stream (BVI)*

21  *Infrastructure Ltd.*, 536 U.S. 88, 91 (2002) (quoting *Steamship Co. v. Tugman*, 106 U.S. 118, 121

22  (1882)).  One of the fundamental principals of so-called "alienage jurisdiction" is that the federal

23  judicial power cannot extend to cases solely involving aliens. *Kramer v. Caribbean Mills*, *Inc.*, 394 U.S.

24  823, 825 (1969); *Hodgson v. Bowerbank,* 9 U.S. 303 (1809).

25           The Supreme Court interprets the diversity statute to require a "complete diversity" of

26  citizenship. *Carden v. Arkoma Assoc.*, 494 U.S. 185, 186 (1990) (citing *Strawbridge v. Curtiss*, 7 U.S.

27  267, 267 (1806)). To have a complete diversity, all plaintiffs must be of different citizenship than all

28  defendants.  *See* 28 U.S.C. §1332; *Strawbridge v. Curtis*, 7 U.S. 267, 267 (1806). In 1988, Congress

1   amended the diversity statute to include: "[f]or the purposes of [§1332], an alien admitted to the United

2   States for permanent residence shall be deemed a citizen of the State where the alien is domiciled." *See*

3   28 U.S.C. §1332(a)(4). The literal application of the 1988 Amendment leads to an arguably

4   unconstitutional result of having solely alien parties, in conflict with the limits on the alienage

5   jurisdiction. However, because the two individual defendants in this case are foreign citizens who have

6   not been admitted to the United States for permanent residence, we need not to discuss this conflict

7   further.

8        The Ninth Circuit finds a lack of complete diversity when an alien plaintiff sues an alien and a

9   U.S. defendant because an alien plaintiff is a citizen of the same state as an alien defendant.[1] The parties

10  in this case lack complete diversity pursuant to 28 U.S.C. §1332. In the instant action, the Plaintiff is a

11  foreign corporation suing two foreign Defendants and one United States corporation. Plaintiff Agricola

12  is organized under the laws of Mexican and is deemed a Mexican citizen for the purposes determining

13  diversity citizenship. Defendants Rodriguez and Guillen hold citizenship in Mexico and have never been

14  granted permanent resident immigration status.[2] Although Defendant Chiquita is a United States

15  Delaware corporation, the presence of a United States Defendant does not preserve diversity when a

16  foreign Plaintiff sues foreign Defendants. *See Faysoun,* 878 F.3d at 294. Accordingly, Plaintiff fails to

17  establish a complete diversity jurisdiction because Plaintiff and two individual Defendants are both

18  Mexican citizens.

19       Plaintiff argues that the Court can create diversity by realigning former Counter-Defendant Avila

20  as a plaintiff. However, the Plaintiff's argument fails because the Court lacks jurisdiction over Avila.

21  Avila was voluntarily dismissed from this case pursuant to Fed. R. Civ. Proc. Rule 41(a) and (c). [*See*

22  Doc. Nos. 126, 127.] Rule 41(a)(1)(A)(i) "grants a plaintiff an absolute right to dismiss [] without

23  prejudice . . . and requires no action on the part of the court." *United States v. Real Property Located at*

24  *475 Marin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1145 (9th Cir. 2008) (quoting *Duke Energy Trading*

25

26  [1] *Faysound, Ltd. v. United Coconut Chems., Inc.*, 878 F.3d 290, 294 (9th Cir. 1989); *Cheng v. Boeing Co.,* 708 F.2d 1406, 1412 (9th Cir. 1983) (presence of a U.S. defendant did not preserve

27  diversity to the alien parties); *see also Nike, Inc. v. Commercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987 (9th Cir. 1994) (Nike's presence as plaintiff does not salvage jurisdiction between foreign parties).

28

    [2] Plaintiff does not challenge the Defendants Rodriguez and Guillen's citizenship.

10cv00772

1   *and Marketing, L.L.C. v. Davis*, 267 F.3d 1042, 1049 (9th Cir. 2001) (internal quotation marks omitted).

2   Rule 41(c)(1) states that a voluntarily counterclaim dismissal "must be made before a responsive

3   pleading is served." Fed. R. Civ. Pro. 41(c)(1). Additionally, once the Notice of Dismissal is filed, and

4   "the district court loses jurisdiction over the dismissed claims and may not address the merits of such

5   claims or issue further order pertaining to them." *Real Property*, 545 F.3d at 1145. Here, Avila was a

6   nominal counterclaim-defendant. Avila was never served with a Summons or a Complaint. The

7   voluntary dismissal of Avila was proper because Avila has never filed an answer or otherwise appeared

8   in this case. [*See* Doc. No. 124-1, ¶3.] Further, the effect of filing the Notice of Dismissal leaves the

9   parties as though no action had been brought against Avila. *See id.* (quoting *Commercial Space Mgmt.*

10  *Co. v. Boeing Co.*, 193 F.3d 1074, 1077 (9th Cir. 1999). So, Avila is not a party in this case, and the

11  Court lacks jurisdiction over Avila to realign him as a Plaintiff. Accordingly, Plaintiff Agricola's

12  motions: (1) a Motion to Substitute Party; and (2) a Motion for Leave to File Supplemental Complaint,

13  [Doc. Nos. 92 and 93 respectively], are hereby DENIED.

14          Since the jurisdiction of the court depends upon the state of the case and parties at the time of the

15  action is brought, subject matter jurisdiction based on diversity of citizenship is governed by the facts

16  that existed at the time of the filing. *Grupo Dataflux v. Atlas Global Grp, L.P.*, 541 U.S. 567 (2004)

17  (citing *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)). The defect of complete diversity in this case

18  cannot be cured, and the dismissal for lack of subject matter jurisdiction is the only available option. As

19  such, the motions to dismiss for lack of subject matter jurisdiction [Doc. No. 112, 114 and joinder

20  motion Doc. No.118] are hereby GRANTED. Having found that the Court lacks jurisdiction, the Court

21  fails to reach the merits of the  remaining motions, Doc. Nos. 92, 93, 106 and the non-jurisdictional

22  portions of 114, which are hereby DENIED AS MOOT.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

10cv00772

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*<u>**Conclusion**</u>*

For the reasons set forth above, the motions to dismiss for lack of subject matter jurisdiction [Doc. No. 112, 114 and joinder motion Doc. No.118] are hereby GRANTED and the remaining motions, Doc. Nos. 106 and the non-jurisdictional portions of 114, are hereby DENIED AS MOOT.  Plaintiff Agricola's motions: (1) a Motion to Substitute Party; and (2) a Motion for Leave to File Supplemental Complaint, [Doc. Nos. 92 and 93 respectively], are DENIED.

IT IS SO ORDERED.


DATED:  December 20, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge

10

10cv00772